[Civ. No. 30056. Second Dist., Div. Two. Apr. 20, 1967.]

SHIPYARD WORKERS EDUCATIONAL ASSOCIATION, INC., et al., Plaintiffs and Respondents, v. THOMAS C. LYNCH, as Attorney General, etc., Defendant; LOCAL UNION NO. 9 OF SHIPBUILDING WORKERS et al., Interveners and Appellants.

Choate & Holland, Arnold, Smith & Schwartz, Jerome Smith and Robert M. Dohrmann for Interveners, and Appellants.

Huey P. Shepard for Plaintiffs and Respondents.

HERNDON, J.—This action for declaratory relief was brought by Shipyard Workers Educational Association, Inc., hereinafter referred to as the "Association," and by four individual plaintiffs who are alleged to be "the elected or de facto board of directors and officers" of plaintiff Association.

The Attorney General of the State of California was named as the sole defendant. As a more or less incidental item of relief, the complaint sought a determination of the question whether or not the Association was a charitable corporation subject to the Uniform Supervision of Trustees for Charitable Purposes Act. (Gov. Code, §§ 12580-12585.)

The two adversary parties who entered the litigation by way of intervention are Local Union No. 9 of the Industrial Union of Marine and Shipbuilding Workers of America and the Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO. These intervenors, who are the appellants herein, will be referred to hereinafter as the "National Union" and the "Local" or "Local 9."

### The Nature of the Controversy

As the allegations of the pleadings clearly indicate, and as all parties apparently agree, the major and essential reason for the bringing of this action was to secure an adjudication of an existing controversy between the Association and the intervenors.

The Association sought, *inter alia*, a declaration to the effect that it was vested with all right, title and interest in and to certain described real property to which it held legal title and that it was "empowered to sell, encumber, and otherwise deal with the real property and other assets of said corporation pursuant to the Articles and By-Laws and the laws of the State of California."

The essence of the opposing position taken by the National Union and Local 9 as stated in their pleading, and as indicated throughout the trial, was that respondent Association was merely the creature and instrumentality of the Local.

Their joint pleading alleges that the "sole purpose of the said [Association] which was created by and with the funds of Local 9 was to provide a convenient method for the holding [of] title, for and on behalf of said Local 9, to real property owned, as well as to real property later to be acquired, by Local 9." And further, "that [the Association] holds bare legal title as Trustee, on behalf of and for the benefit of Local 9, . . . and that Local 9 is the real and beneficial owner of said property." The National Union and Local 9 urge that the Association is *functus officio* and that it should be ordered to convey to Local 9 the assets to which it holds only bare legal title.

As will become evident from our further discussion, a decision upon the issues presented by the pleadings and the proof necessarily required determination of the true nature of the legal relationships of the entities *inter se* and their respective powers, rights and duties as created by their charters and by-laws as well as those existing by reason of the application of general principles of law.

The adjudication of this dispute required a judicial determination of (1) the legal status and purpose of the Association; and (2) its legal rights and duties with respect to the ownership, management and control of the real property which had been conveyed to it and title to which stood in its name.

### The Decision of the Trial Court

The judgment of the trial court determined that respondent Association was a nonprofit corporation, but not a charitable one, and therefore was not subject to regulation by the Attorney General. This determination is not questioned. The Attorney General, being in reality only a nominal defendant, is not a party to this appeal.

The trial court found and held, not only that the legal title to the property described in the complaint resided in the Association, but also that the Association was in fact the owner thereof in its own right and that Local 9 and the National Union had no right, title or interest in said real property and were entitled to no relief.

We believe that direct quotation from the judgment against which appellants Local 9 and the National Union are now directing their attack will greatly serve the interests of clarity and accuracy of understanding. It will be noted that respondent Association is referred to as "plaintiff corporation" in

the significant provisions of the judgment declaring as follows:

"VII. That plaintiff corporation has the right to set up and keep records and accounts of its corporate affairs and that it is its duty to do so. That the defacto directors are hereby directed to commence keeping records and accounts of the corporate affairs of plaintiff corporation as soon as may be practicable.

"VIII. That plaintiff corporation is authorized through its officers and directors to manage and control its property. That the defacto directors are hereby directed to develop a plan to manage and control the property of plaintiff corporation.

"IX. That title to the property described in plaintiffs' complaint is in plaintiff corporation and plaintiff corporation is the owner thereof.

"X. That it is the duty of the defacto directors of plaintiff corporation to hold a meeting of the members of plaintiff corporation as soon as practicable for the adoption of by-laws, the election of officers and directors and for such other purposes as may lawfully come before such meeting. The defacto directors of plaintiff corporation are hereby ordered and directed to hold a membership meeting for the purpose of adoption of by-laws, election of officers and directors and for such other purposes as may lawfully come before such meeting as soon as practicable. It is the duty of the intervenors to supply the defacto directors of plaintiff corporation and plaintiff corporation with the names and addresses of members of plaintiff corporation who are also members of Local 9. The intervenors are hereby ordered and directed to furnish and make available to the defacto directors of plaintiff corporation and plaintiff corporation with the names and addresses of the members of plaintiff corporation as soon as practicable. It is the duty of the intervenors to furnish plaintiff corporation with a written inventory of the assets of plaintiff corporation in the possession or control of the intervenors. The intervenors are hereby directed and ordered to furnish plaintiff corporation with a written inventory of the assets of plaintiff corporation in the possession or control of the intervenors.

"That the intervenors have no right, title or interest in the real property described in the complaint, and that the intervenors are not entitled to any relief upon their complaint in intervention.''

*Summary Statement of the Evidence.*

Since there is no material conflict in the evidence, the facts disclosed by the comparatively limited record are essentially undisputed.

It appears that in 1943, the affairs of Local 9 were being administered by a Mr. Pollard under the jurisdiction of the National Union. It was decided at that time that it would be desirable to acquire a meeting hall for the organization and to purchase the property with accumulated funds of the Local. Accordingly, Harry Kaplan, then acting as counsel for Local 9, advised that it would be desirable to form a nonprofit corporation for the purpose of taking title to the real property. At that time a labor union was not authorized to take title to real property.[1]

To this end respondent Association was incorporated and it was named as grantee of the real property on which the meeting hall was to be, and still is, located. In 1945, it was discovered that only one of the three trustees of Local 9 in whose names Local 9 previously had taken title to two additional parcels of real property was still alive. Therefore, to avoid further problems, title to these two parcels also was transferred to the Association. At various times the Association has held title to one other parcel of real property and a few shares of corporate stock.

For more than 20 years following its creation, the Association apparently functioned only as a passive and inactive trustee or instrumentality of Local 9. So far as can be ascertained from the record, its organization was never perfected by the adoption of by-laws or by the election of officers. Five different sets of by-laws were received in evidence but the trial court was given nothing in the way of evidence to enable it to determine whether or not any of the several sets of by-laws was ever adopted.[2]

The complaint contains an allegation that the *four* named individuals who are joined with the Association as parties plaintiff are "the duly constituted successors to the incorpo-

[1]Until amended by Stats. 1949, ch. 626, § 1, p. 1123, a labor union was not one of the unincorporated associations authorized by Corp. Code, § 21200 to hold title to real property.

[2]The judgment declares "That it cannot be ascertained whether or not corporate by-laws have been adopted and that it is the duty of [the Association] to adopt appropriate by-laws at the earliest practicable time."

rators of said charitable corporation and are the elected or de facto board of directors and officers of said charitable corporation'' and that ''said plaintiffs have, with the knowledge, consent and authority of the members of said charitable corporation, dealt with the affairs and property of said charitable corporation and acted as the officers and directors of said corporation.''

Article V of the Association's Articles of Incorporation names *three* persons who are referred to as ''the persons who are to act in the capacity of directors until the selection of their successors.'' And said article further provides that ''The number of directors named above shall constitute the number of directors in the Association, until changed by an amendment to these Articles, or to the By-Laws, increasing or decreasing the number of directors as may be desired.'' It does not appear that these articles were ever amended. The Articles of Incorporation of the Association do not contain any provision indicating the qualifications for membership. However, it appears to be undisputed that all members of Local 9 are ipso facto members of the Association. The judgment recites that the members of the Association ''are the same persons who are members of Local 9.''

The by-laws of Local 9 contain provisions with respect to the government of the Association which are completely irreconcilable with the above recited provisions of the Association's articles. The by-laws of Local 9 contain provisions for a board of three trustees to be elected by the general membership of the Local and to serve staggered terms of three years each. It is provided that these trustees ''Shall serve as officers of the Holding Corporation, namely, Shipyard Workers Educational Association.'' Paradoxically, this language of Local 9's by-laws providing that its elected trustees shall serve as officers of its holding corporation provides the sole basis for the individual plaintiffs' claim that they are the ''de facto directors'' of the respondent Association, which, they assert, is wholly ''independent'' of Local 9.

At all times since the acquisition of the property, the rental payments from lessees of space in the building which houses the union meeting hall have been received by the Local and treated as a part of its general income. All financial reports and reports required by the federal Landrum-Griffin Act have listed the realty to which the Association held legal title as an

asset of the Local. All expenses pertaining to any of the properties held by the Association, including taxes, assessments, maintenance, etc., have been authorized and paid by the Local out of its general funds. For a brief period the Local's bookkeeper maintained separate records for the Association but this practice was discontinued upon instructions from the National. Such infrequent meetings of the membership as were held by the Association, as such, apparently were conducted during recesses taken in the course of regular meetings of Local 9.

The following quotation from a legal opinion prepared by counsel for the National in February of 1949, appears to be an accurate statement of the intended status of the Association and confirmed by the conduct of all parties throughout the years:

"The above is a non-profit corporation whose members are restricted to the members in good standing of IUMSWA Local No. 9, and whose officers and directors are the three trustees of Local 9. The corporation was created solely for the purpose of holding title to a piece of real estate which was purchased for, and with the funds of, Local 9. The reason for placing title to this real estate in the name of the Association was the greater convenience of so doing: Since a union cannot hold title to real estate in its own name, it would have been necessary, if the Association had not been formed, to place title to the real estate in the names of the Local's trustees. This would have meant that every time one of the trustees failed of re-election, a new deed would have to be made out from the outgoing trustee to the newly constituted trustee. By forming the Association, this inconvenient and expensive procedure was avoided."

However, in October 1963, the individual plaintiffs, who apparently are the presently acting trustees of the Association, decided to depart from this established practice and asserted their right as de facto directors of the Association, which they describe as an "independent corporation," to sell certain parcels of real property held by it regardless of the wishes or rights of the Local and the National. After hearing the undisputed evidence as to the true purpose and historic conduct of the Association, the trial court failed to make any specific finding as to the status of the Association or as to its true and intended purpose but found merely that "The pur-

pose of the [Association] is as set forth in the Articles of Incorporation, Art. II[3] . . . ."

The language used in the Articles of Incorporation to state the purposes of the Association is so general, all-inclusive and indefinite that it provides no helpful indication of the specific purpose or purposes contemplated by the incorporators. In fact, it is quite impossible from the articles even to determine the persons who are to be eligible for membership in the Association since Article VII thereof merely provides:

"Membership in this association shall be evidenced by a certificate of membership, the form, terms and conditions of which shall as be [sic] provided for in the By-Laws, and said certificate shall be assignable or transferable only to the extent and in the manner permitted and expressly provided in the By-Laws."

Although the trial court found that it was impossible to "ascertain *whether or not the by-laws were ever adopted by [the Association]* or which of the five copies of purported by-laws that were introduced into evidence, if any of them, are the duly adopted by-laws of [the Association]," it nevertheless found "That the members of [the Association] are the same persons who are members of Local 9 of the Industrial Union of Marine and Shipbuilding Workers of America." (Italics added.)

### *Local 9 is the Beneficial Owner of The Property in Controversy.*

■ As we have indicated, there is no material conflict in the evidence. The uncontradicted evidence establishes beyond any reasonable doubt that Local 9 is the beneficial owner of the property in controversy. The property was purchased with funds of the Local and the Association was formed to take legal title only because at the time of the acquisition of the property the Local, as a labor union, was not one of the unincorporated associations legally authorized to hold title to real property. That disability, as we have noted, was removed by the Legislature in 1949.

---

[3]Article II of the Articles of Incorporation reads as follows:

"This Association does not contemplate pecuniary gain or profit to the members thereof, its officers or directors, and is organized and exists as a non-profit, benevolent association, without capital stock, pursuant to the laws of the State of California.

"The purposes and objects for which it is formed are:

"To further by all proper and legitimate means and agencies, and through moral, social, educational, and recreational influences and activi-

During the entire period of more than 20 years of its existence the Association has been an almost completely inactive entity. Indeed, it does not appear that its organization was ever perfected. The management and control of the property at all times have been exercised exclusively by the Local. In short, the evidence which we have recited in considerable detail compels a finding that the entire beneficial ownership of the property at all times since its acquisition has resided in Local 9 and that the Association has held, and now holds, nothing more than the bare legal title thereto.

### The National's Claim of Interest

The National asserts an interest in the property of the Local on the basis of the terms and conditions of the Local's affiliation with the parent organization. The copy of the National's Constitution which was received in evidence contains the following provisions:

"Sec. 22 (A) No Local, Division, or other subdivision of the Union has or shall have the right or power to withdraw from, secede from, or terminate its affiliation with this Union. No Local, Division, or other subdivision of this Union has or shall have the right or power to disband or dissolve itself so long as seven members thereof desire to maintain its existence. . . .

"(C) In the event that any member or group of members attempts to secede, resign or withdraw from, or to terminate affiliation with, or membership in, any Local, Division, or subdivision of this Union, such member or group of members shall forfeit all claim upon or interest in the property and funds of said Local, Division, or subdivision, and such property and funds shall belong exclusively to the remaining members, and in the event that less than seven members remain in the Local, Division or subdivision, its property and funds shall become the property of the G.E.B. [General Executive Board], and the officers or other persons having

---

ties, the general welfare and mutual improvement of its members, of organized labor, and of society in general; to promote or take part in, or cooperate with, any program or programs in Los Angeles County, California, or elsewhere within the Nations, for social economic betterment, either alone or in concert with other agencies, public or private, or other individuals, to lessen such abuses or maladjustments in society as may be factors in, or tend to, an undermining of the well-being of its members and their families, of organized labor, and of the Nation and State. In furtherance and not in limitation of the objects and purposes herein set forth, this Association shall have the power to do any and all of the following things: . . ."

possession or custody of said property or funds shall transmit the same immediately to the G.E.B.

''(D) Upon the dissolution, suspension, expulsion, or termination of affiliation of any Local, Division, or other subdivision of this Union, the Charter, Seal, and all monies, books, and properties of that Local, Division, or other subdivision of this Union shall automatically become the property of the G.E.B., and the officers of that Local, Division, or other subdivision shall be responsible for their immediate transmission to the G.E.B.''

It has been held that such provisions as the foregoing have contractual aspects. The decisions indicate that whether or to what extent such provisions are enforceable depends upon the facts and circumstances of each particular case. (Cf. *Brown* v. *Hook,* 79 Cal.App.2d 781 [180 P.2d 982] ; *Crocker* v. *Weil,* 227 Ore. 260 [361 P.2d 1014] ; and *Bradley* v. *O'Hare,* 11 App. Div.2d 15 [202 N.Y.S.2d 141].)

This litigation provides no occasion for any judicial determination of the rights of the National with respect to the property of Local 9. So far as we are able to see, an occasion for litigation and judicial determination of such rights would arise only in the event of a controversy resulting from the termination of the Local's affiliation by its expulsion or withdrawal from the National. Therefore, we purposely refrain from expressing or implying any opinion or decision concerning the rights and duties of the National and the Local *inter se.*

Respondents have argued that it would be advantageous to the membership of Local 9 to accept the trial court's determination that the National and the Local ''have no right, title or interest'' in the property which now is held in the name of the Association. Respondents urge that confirmation of the Association's full and complete ownership of the property would avoid any possibility of its loss to the National in the event of the Local's disaffiliation.

This reasoning proceeds upon untenable premises. In the first place, as we have shown, the uncontradicted evidence establishes the fact that Local 9 is the beneficial owner of the property. In the second place, whatever rights the National might have with respect to the property of the Local in the event of the latter's disaffiliation would be entitled to the same judicial enforcement whether the Local held title to its assets in its own name or in the name of a trustee.

We hold it to be established by the uncontradicted evidence that respondent Association at all times has held, and now holds, the legal title to the real property here in question solely in its capacity as agent or trustee for the membership of appellant Local 9 and that no reason now exists requiring or justifying the continued separation of the legal title to said real property from its beneficial ownership. (Corp. Code, § 21200.)

On the basis of the foregoing holdings, the judgment under review is reversed and the cause is remanded for further proceedings consistent with this opinion.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied May 15, 1967.